OPINION *Page 2 
{¶ 1} Defendant-appellant, Richard Bulin, appeals his convictions and sentences in the Stark County Court of Common Pleas on three counts of violating a protection order, felonies of the fifth degree in violation of R.C. 2919.27. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Lisa Bulin and appellant met in 2001 and married in 2002. They subsequently had two children. Through the course of their relationship and marriage, the couple lived in Missouri, Nevada and Ohio. Appellant began demonstrating violence toward Lisa before they were married, when the couple lived in Missouri. Lisa testified that the appellant had choked her prior to their marriage, but they just "laughed it off." She did not file a police report.
 {¶ 3} Episodes of violence continued after the couple moved to Ohio. On one occasion, appellant chased Lisa up the stairs of their home. When Lisa closed and locked a door behind her to get away from him, appellant broke the doorjamb getting in, grabbed her and then walked away. She did not file a police report. Appellant would also take the car keys and not permit Lisa to drive or leave the house.
 {¶ 4} In 2006, the appellant went to prison for an OVI offense. In September 2006, Lisa called police because appellant woke her up demanding to know where she was hiding the man that was hiding under the bed. Appellant shoved Lisa into a closet, and chased her around the house. Appellant then pushed his son when his son told him no one was in the house. Appellant was arrested and later convicted of domestic violence. Because of this incident, Lisa obtained a civil protection order in May 10, *Page 3 
2007. Appellant was served with a copy of the protection order while he was in jail. The protection order prohibits appellant from making any contact with Lisa in person, by telephone, fax, e-mail, voice mail, delivery service, writing or communication by any other means in person or through another person.
 {¶ 5} A few days after the protection order was issued, appellant was released from jail. He went to Lisa's house and knocked at the door. Lisa refused to let him in, locked the door and called the police. Appellant left, but then called her while police were at the residence. Lisa gave the phone to the officer. Appellant claimed he did not know about the protection order, but said he would not come to the house.
 {¶ 6} Appellant again appeared at Lisa's house. On this occasion, he sent another man to knock at the door. When Lisa came to the door, appellant appeared from around the side of the house. Lisa shut and locked the door. Appellant kicked the door in an attempt to get inside. Lisa's neighbors called the police.
 {¶ 7} Although Lisa had set all of appellant's belongings outside in bags for him to collect, he continued to contact Lisa by telephone telling her there were other things he needed. Sometimes he would call and just laugh when the answering machine took his call.
 {¶ 8} In May 2007, appellant appeared at Lisa's house while she was hosting a party. Lisa called the police and appellant was arrested. He was later convicted of violating a protection order.
 {¶ 9} In August 2007, Lisa again called police after appellant telephoned twice requesting his clothing and to see the children. Lisa told appellant he was violating the protection order and hung up on him. Appellant continued to call, however, and advised *Page 4 
Lisa he did not care about the protection order. Lisa made two more police reports on September 2 and 10, 2007, respectfully. On October 13, 2007, appellant sent Lisa Bulin a letter from prison wherein he indicated that he loved her and wanted to be with her. Lisa turned the letter over to law enforcement.
 {¶ 10} Lisa testified that she contacted appellant to allow him to speak with their five (5) year old child. She admitted that she was "thrilled to be able to talk to somebody" at the time of this call. She also asked the appellant to visit and sent him text messages. She further admitted that she might have asked the appellant to call her.
 {¶ 11} At trial, appellant took the stand in his own defense. On cross-examination he admitted that he made a phone call to Lisa on September 2, 2007 and had wrote her a letter in October 2007. When asked about making a phone call to Lisa on September 10, 2007, appellant admitted he had been in contact with Lisa ". . . that whole period of time. More than once, you know."
 {¶ 12} Deputy Ryan Hostetler testified that jail records demonstrated that the appellant placed calls from the Stark County jail to Lisa Bulin's phone number on September 2, 2007 and September 10, 2007. Deputy Hostetler confirmed that the appellant was housed in the housing block from which the calls originated.
 {¶ 13} On November 20, 2007, the appellant was indicted on three counts of violating a protection order, felonies of the fifth degree in violation of R.C. 2919.27 and one count of menacing by stalking, a felony of the fourth degree in violation of R.C. 2903.211. *Page 5 
 {¶ 14} The jury acquitted appellant of menacing by stalking, but found him guilty of three counts of violating a protection order. The court ordered a pre-sentence investigation and made referrals for the mental health tract and to the Stark Regional Community Corrections Center. Although the opportunity for community control sanctions was extended to appellant, he denied that opportunity, opting instead to be sentenced to prison. Appellant was sentenced to an aggregate 14 months incarceration.
 {¶ 15} Appellant timely appealed, raising three assignments error:
 {¶ 16} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 17} "II. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO EXERCIZE [sic.] A PEREMPTORY CHALLENGE IN VIOLATION OF BATSON V. KENTUCKY.
 {¶ 18} "III. THE TRIAL COURT ERRED IN ADMITING [sic.] EVIDENCE WHICH WAS UNFAIRLY PREJUDICIAL."
 I. {¶ 19} Appellant, in his first assignment of error, argues that the jury's decision finding him guilty of three counts of violating a protection order is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 20} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); State v. Jenks (1991), 61 Ohio St.3d 259 at 273,574 N.E.2d 492 *Page 6 
at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781;Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503.
 {¶ 21} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra.
 {¶ 22} Employing the above standard, we believe that the State presented sufficient evidence from which the trier of fact could conclude, beyond a reasonable doubt, that appellant committed the offenses of violating a protection order. Thus, the jury did not err by finding appellant guilty. *Page 7 
 {¶ 23} Appellant was charged with three counts of violating a protection order in violation of R.C 2919.27(A) (1) which states:
 {¶ 24} "(A) No person shall recklessly violate the terms of any of the following:
 {¶ 25} "(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code. . ."
 {¶ 26} The State alleged that appellant violated a protection order on three occasions — by calling Lisa on the phone on September 2 and September 10, 2007, and a third time by sending her a letter in October 2007.
 {¶ 27} State's Exhibit One at trial was the order of protection issued to Lisa Bulin on May 10, 2007 pursuant to R.C. 3113.31. Per item seven of the order of protection, appellant was not to initiate or have contact with Lisa by "telephone, fax, e-mail, voice mail, delivery service, writings or communications by any other means in person or through another person." Further item seven of the protection order advised appellant that he "may not violate this order even with the permission of the protected person."
 {¶ 28} Lisa testified that appellant called her on the phone on September 2 and 10, 2007 and wrote her a letter in October 2007. She testified she made a police report on both occasions. Deputy Ryan Hostetler testified that he investigated complaints made to the Stark County Sheriff's department by Lisa Bulin. He confirmed that Lisa had reported the September phone calls.
 {¶ 29} Appellant took the stand in his own defense. During cross-examination, he admitted that he had been served with the order of protection and understood he was not to initiate any contact with Lisa. He further admitted he had subsequently wrote Lisa a letter and made the September 2nd phone call. When asked about the September *Page 8 
10, 2007 phone call, appellant admitted he had been in contact with Lisa ". . . that whole period of time. More than once, you know."
 {¶ 30} Although appellant argues that the evidence is insufficient because Lisa "invited and welcomed" contact from him, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 31} This Court must afford the decision of the trier of fact concerning credibility issues the appropriate deference. We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. State v. Parks, 3rd Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citing State v. Twitty, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114. "A fundamental premise of our criminal trial system is that `thejury is the lie detector.' United States v. Barnard, 490 F.2d 907, 912
(C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 32} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the *Page 9 
evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 33} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of three counts of violating a protection order.
 {¶ 34} Accordingly, appellant's first assignment of error is denied.
 II. {¶ 35} In his second assignment of error, appellant maintains that the trial court failed to conduct a proper constitutional analysis as outlined in Batson v. Kentucky (1986), 476 U.S. 79 in determining that the State was not racially motivated in excluding an African-American from the jury through the use of a peremptory challenge. See, Hicks v.Westinghouse Materials Co. (1997), 78 Ohio St. 3d 95, 98; State v.Toland, Stark App. No. 2006-CA-0162, 2007-Ohio-644. We disagree. *Page 10 
 {¶ 36} A defendant is denied equal protection of the law guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which numbers of the defendant's race have been purposely excluded. Strauder v. W. Virginia (1880),100 U.S. 303, 305; State v. Hernandez (1992), 63 Ohio St. 3d 577; State v.Bryant (1995), 104 Ohio App. 3d 512, 516. The "equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as the defendant will be unable to impartially consider the state's case against the defendant." State v. Bryant, supra, 104 Ohio App. 3d 516;Batson v. Kentucky, supra, 476 U.S. at 89.
 {¶ 37} Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise Batson test when racial discrimination has been alleged in opposition to a peremptory challenge." Hicks v. Westinghouse Materials Co., supra,78 Ohio St. 3d at 99.
 {¶ 38} In Hicks, supra, the Ohio Supreme Court set forth theBatson test as follows:
 {¶ 39} "The United States Supreme Court set forth in Batson the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race *Page 11 
from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently `discriminating' device, permitting `those to discriminate who are of a mind to discriminate'.State v. Hernandez (1992), 63 Ohio St. 3d 577, 582, 589 N.E. 2d 1310,1313, certiorari denied (1992), 506 U.S. 898, 113 S. Ct. 279,121 L. Ed. 2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See,Batson at 96-97, 106 S. Ct. at 1723, 90 L. Ed. 2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation `related to the particular case to be tried.' Id. at 95, 106 S. Ct. at 1724, 90 L.Ed. 2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation `need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S. Ct. at 723, 90 L. Ed. 2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. Hernandez v. New York (1991),500 U.S. 352, 363, 111 S. Ct. 1859, 1868, 114 L. Ed. 2d 395, 409. 78 Ohio St. 3d. 98-9.
 {¶ 40} Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem (1995),514 U.S. 765, 767-768, 115 S.Ct. 1769. (per curiam); Rice v. Collins (2006),546 U.S. 333, 126 S.Ct. 969, 973-74. *Page 12 
 {¶ 41} Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. Purkett v.Elem (1995), 514 U.S. 765, 766-767, 115 S. Ct. 1769, 1770. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768,115 S. Ct. at 1771. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed.Hernandez v. New York, 500 U.S. at 365, 111 S. Ct. at 1869; State v.Nash (August 14, 1995), Stark County Court of Appeals, Case No. 1995 CA 00024. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768,115 S.Ct. 1769; Rice v. Collins, supra at 126 S.Ct. 974.
 {¶ 42} It is irrelevant how many minority jurors remain on the panel if even one is excluded because of race. State v. Bryant, supra,104 Ohio App. 3d 512; State v. Tuck 80 Ohio App 3d 721, 724
(Batson, applicable even if there is only one African-American juror on the panel); Jones v. Ryan (C.A. 3, 1993), 987 F. 2d 960, 972; UnitedStates v. David (C.A. 11, 1986), 803 F. 2d 1567.
 {¶ 43} On direct appeal in federal court, the credibility findings a trial court makes in a Batson inquiry are reviewed for clear error.Hernandez v. New York, 500 U.S. 352, 364-366, 111 S.Ct. 1859,114 L.Ed.2d 395 (1991) (plurality opinion) (holding that evaluation of a prosecutor's credibility "lies `peculiarly within a trial judge's province'"). Rice v. Collins, supra at 126 S.Ct. 974. *Page 13 
 {¶ 44} In the case at bar, the prosecutor voluntarily explained her reasons for the peremptory strike. Hicks v. Westinghouse, supra,78 Ohio St. 3d at 100; State v. Hernandez, supra, 63 Ohio St. 3d at 583;Hernandez v. New York, supra; State v. Nash, supra.
 {¶ 45} "MS. DAVE: Your Honor, for the record, the State is moving to exclude Juror No. 16 for several reasons that are non-racial based.
 {¶ 46} "First of all, that the defendant — or the juror had spoke [sic.] about prior violence in the home. He also said that he went to jail in [1996] for criminal damaging, for arguing with the neighbors and such.
 {¶ 47} "THE COURT: Mr. Reisch, is your client African-American?
 {¶ 48} "MR. REISCH: I believe he is Filipino.
 {¶ 49} "THE COURT: So he is in essence a minority, but not African-American.
 {¶ 50} "MR. REISCH: Right.
 {¶ 51} "THE COURT: The gentleman juror is African-American, he is male. She anticipated I guess what you were going to say that you didn't get the chance to even indicate why you wanted to approach. I assume that was the reason.
 {¶ 52} "MR. REISCH: Yeah, that was, Your Honor.
 {¶ 53} "THE COURT: All right. Well, the court finds that there is a race neutral basis has been stated by the Prosecutor for exercising a peremptory challenge and overrules the objection." (1T. at 55-57).
 {¶ 54} Appellant's trial involved matters of domestic violence and Juror No. 16 admitted to the existence of violence in his home between himself and the mother of his children. Furthermore, he admitted to being combative with his neighbors and to having *Page 14 
family members employed by the Canton Police Department. All of these things gave the State legitimate, race-neutral reasons for exercising a peremptory challenge to remove Juror No. 16 from the venire.
 {¶ 55} "The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying Batson." Rice v. Collins, supra at 126 S.Ct. at 977. (Breyer, J., concurring).
 {¶ 56} We do not find that the dismissal of Juror No. 16 was clearly erroneous. We find that the reason provided by the prosecutor prior to exercising a peremptory challenge to excuse Juror No. 16 was racially neutral.
 {¶ 57} Appellant's second assignment of error is denied.
 III. {¶ 58} In his third assignment of error, appellant contends the trial court erred in admitting evidence of his mental health and substance abuse history. Appellant complains that this information was unfairly prejudicial because it was not necessary to prove the crime of violation of a protection order and thus painted him in a negative light. We disagree.
 {¶ 59} Evid. R. 103(A) provides that error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if *Page 15 
the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent. In the case at bar, counsel did not object at trial. Because no objection was made to the testimony at the trial level, we must review this error under the plain error standard.
 {¶ 60} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 61} In U.S. v. Dominguez Benitez (2004), 542 U.S. 74,124 S.Ct. 2333, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. SeeArizona v. Fulminante, 499 U. S. 279, 309-310 (1991) (giving examples).
 {¶ 62} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. SeeKotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict."Kotteakos, supra, at 776." Id. at 81-82; *Page 16 124 S.Ct. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.
 {¶ 63} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'"State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quotingState v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 64} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Supreme Court held in addition to those reasons listed in the Rule, evidence of other bad acts may be admissible to prove identity. However, because Evid. R. 404(B), and R.C. 2945. 59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict, Broom, syllabus by the court, paragraph 1.
 {¶ 65} In State v. Burson (1974), 38 Ohio St.2d 157, 311 N.E.2d 526, the Ohio Supreme Court made the following observation: "[n]owhere do the words `like' or *Page 17 
`similar' appear in the statute. Prosecutors and trial courts should be particularly aware that evidence of other acts of a defendant if admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question." Id. at 158, 311 N.E.2d at 528. The Burson court further noted "[w]hen the purpose of evidence of other acts is to show the absence of mistake or accident on the part of the defendant in committing the offense charged, it must be shown that a connection, in the mind of the defendant, must have existed between the offense in question and the other acts of a similar nature. SeeState v. Moore (1948), 149 Ohio St. 226, 78 N.E.2d 365. The other acts of the defendant must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant in showing the defendant acted in the absence of mistake or accident." Id. at 159, 311 N.E.2d 528-29.
 {¶ 66} The admission of prior bad acts is deemed harmless unless there is some reasonable probability the evidence contributed to the accused's conviction, City of Columbus v. Taylor (1988), 39 Ohio St.3d 162,529 N.E.2d 1382.
 {¶ 67} In the case at bar, appellant was also charged with, and acquitted of, menacing by stalking. To prove the charge of menacing by stalking, it was necessary for the State to show that appellant knowingly engaged in a pattern of conduct that caused Lisa to believe he would cause her physical harm or emotional distress, and further that he had a history of violence toward or against Lisa. Appellant's prior conduct toward Lisa, including how his conduct toward or against her was influenced by his mental *Page 18 
health and substance abuse was inextricably related to the alleged act of menacing by stalking because they formed the foundation of "engaging in a pattern of conduct."
 {¶ 68} We further note that appellant himself noted that he "was a heavy drinker." (1T. at 125). He further told the jury about his prior OVI convictions and the fact that he had been in prison. (Id. at 126; 132). Appellant admitted that he had been convicted of domestic violence against Lisa in the past. (Id. at 137).
 {¶ 69} Even if admission of the prior acts could be considered erroneous, we would conclude, from a review of the entire record, that such error would be `harmless beyond a reasonable doubt.' Chapman v.California (1967), 386 U.S. 18, 87 S.Ct. 824; Harrington v.California (1969), 395 U.S. 250, 89 S.Ct. 1726; Schneble v. Florida
(1972), 405 U.S. 427, 92 S.Ct. 1056.
 {¶ 70} Based upon the record, we find that appellant has failed to demonstrate that a plain error affected his substantial rights.
 {¶ 71} Appellant's third assignment of error is denied. *Page 19 
 {¶ 72} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Wise, J., and Edwards, J., concur. *Page 20 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1