OPINION *Page 2 
{¶ 1} Appellant, Mark Fontes, appeals from the April 14, 2007, trial and jury verdict finding him guilty of one count of Possession of Crack Cocaine, a felony of the fifth degree, in violation of R.C. 2925.11. The State of Ohio is Plaintiff-Appellee.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 23, 2007, Appellant was indicted by the Stark County grand jury on one count of possession of crack cocaine, in violation of R.C. 2925.11(A)(C)(4)(c), a felony of the fifth degree. Appellant exercised his right to a trial by jury on November 14, 2007, and on that same day, the jury found him guilty as charged in the indictment. The trial court proceeded immediately to sentencing and sentenced Appellant to twelve months in prison.
 {¶ 3} The facts adduced at trial are as follows:
 {¶ 4} On June 5, 2007, Officers Thomas Hastings and Mark Diels of the Canton Police Department were on routine patrol when they observed a blue Chevrolet Caprice driven by Appellant roll through a stop sign at the intersection of 15th and Superior at midnight. The officers made a traffic stop and approached the vehicle. Officer Diels approached the driver's side of the car and Officer Hastings approached the passenger side.
 {¶ 5} Appellant was driving the car and his friend, Leandous Harvey was in the front passenger seat. Officer Hastings, who secured Mr. Harvey, testified that Mr. Harvey never moved and kept his hands in plain sight during the stop. When Officer Hastings removed Mr. Harvey from the vehicle, he patted him down and found a baggie of marijuana on his person. *Page 3 
 {¶ 6} Officer Diels, a thirteen-year veteran of the Canton Police Department, asked Appellant for his driver's license, which Appellant produced. Appellant stated, according to Officer Diels, that the license plates on the vehicle would probably come back to a Lincoln because he had just purchased the car two days before. Appellant also stated that he did not have the title to prove that the car was his.
 {¶ 7} Officer Diels then asked Appellant to step out of the car. Before he complied with this request, Appellant then placed his wallet over top of the ashtray in the car, which Officer Diels testified was unusual and which was something that he had never observed in his 13 years as an officer.
 {¶ 8} When Appellant exited the vehicle, Officer Diels testified that he noticed a strong odor of marijuana coming from both Appellant and the vehicle. At that time, he searched Appellant and found a baggy of marijuana on him. Upon running the car tags through the police system, the officers determined that the tags did in fact belong to a Lincoln and not the vehicle that they were on. Based on police department policy, the car was impounded for having fictitious plates. Appellant was arrested for the fictitious plates and for the possession of marijuana.
 {¶ 9} During a subsequent inventory search of the vehicle before it was impounded, Officer Diels retrieved Appellant's wallet from the car to return to him and in plain view observed what appeared to be a rock of crack cocaine under the wallet in the ashtray. Lab tests confirmed that the rock was in fact crack cocaine.
 {¶ 10} Appellant testified on his own behalf. He stated that when he was pulled over, he asked Officer Diels why he was pulled over and the officer told him, "never mind that. Step out of the car." Appellant then stated that he told the officers that the *Page 4 
tags on the vehicle were fictitious and that he pulled his baggie of marijuana out of his pocket and handed it to the officer. He stated that Officer Diels then told him "since you gave me the weed, I'm going to have to put you in jail." Appellant stated that the officer then placed handcuffs on him and stated that his wrist was still swollen six months later from having the handcuffs on.
 {¶ 11} Appellant further testified that there was not an ashtray in the car, and that there were no ashes in the car. He stated that he got the car from the owner of a bar and that he was supposed to modify the car, make it faster and give it back to the owner. He stated that he told the officers that the crack was not his and that he had just bought the car for a "period of time." He also testified that he planned to file a civil suit against the police officers after his case was over and that Officer Diels had pulled him over four or five times previously in the Lincoln and had searched that car before.
 {¶ 12} Appellant raises three Assignments of Error:
 {¶ 13} "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO USE A PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY FASHION.
 {¶ 14} "II. THE APPELLANT WAS DENIED HIS RIGHT TO FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
 {¶ 15} "III. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 16} In his first assignment of error, Appellant argues that the trial court erred in permitting the State to exercise a peremptory challenge against an African American *Page 5 
juror pursuant to the Supreme Court's ruling in Batson v. Kentucky
(1986), 476, U.S. 79. We disagree.
 {¶ 17} In order to succeed on a Batson challenge, the complaining party must state a prima facie case of purposeful discrimination underBatson, supra. To do so, the party challenging the strike must demonstrate: (1) that members of a recognized racial group were peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on account of their race. Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise Batson test when racial discrimination has been alleged in opposition to a peremptory challenge." Hicks v. Westinghouse MaterialsCo., supra, 78 Ohio St.3d 95, 99.
 {¶ 18} In Hicks, supra, the Ohio Supreme Court set forth theBatson test as follows:
 {¶ 19} "The United States Supreme Court set forth in Batson the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently `discriminating' device, permitting `those to discriminate who are of a mind to discriminate'. State v. Hernandez (1992),63 Ohio St.3d 577, 582, *Page 6 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898,113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See,Batson at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation `related to the particular case to be tried.' Id. at 95, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation `need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. Hernandez v. New York (1991), 500 U.S. 352,363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409. 78 Ohio St.3d. 98-9."
 {¶ 20} Although the striking party must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem (1995),514 U.S. 765, 767-768, 115 S.Ct. 1769. (per curiam); Rice v.Collins (2006), 546 U.S. 333, 126 S.Ct. 969, 973-74.
 {¶ 21} Finally, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination.Purkett v. Elem (1995), 514 U.S. 765, 766-767, 115 S.Ct. 1769, 1770. It is at this stage that the persuasiveness, and *Page 7 
credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S.Ct. at 1771. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. Hernandez v. New York, 500 U.S. at 365,111 S.Ct. at 1869; State v. Nash (August 14, 1995), 5th
Dist. No. 1995 CA 00024. This final step involves considering "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."Purkett, supra, at 768, 115 S.Ct. 1769; Rice v. Collins, supra at 126 S.Ct. 974.
 {¶ 22} During voir dire, potential juror number 160 admitted that she knew a lot of Appellant's family members, as did a lot of her friends. She stated, "I don't think I should do this" and when the court asked her if she would feel uncomfortable sitting on the jury, she stated that she would. She also stated that she would be worried if one of Appellant's relatives that she knew attended the trial.
 {¶ 23} Appellant objected when the prosecutor attempted to remove the juror for cause and the court did not remove the juror for cause. The prosecutor then used a peremptory challenge to remove the juror, at which point, Appellant's attorney stated that she was the only black juror on the panel. Trial counsel did not offer any further explanation to make his prima facie case as required in the first step ofBatson. He did not refer to any statements made by the prosecutor that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive.
 {¶ 24} Moreover, even if the Appellant had met his prima facie burden to go forward on the challenge, the prosecutor gave a race neutral reason for using a *Page 8 
peremptory challenge against juror 160. Specifically, he stated, "I think based upon the family potential relationship, the State of Ohio satisfied the race neutral reason under Batson, I don't think that the defense has even satisfied its prima facie Batson challenge. I think the State of Ohio satisfied the Batson argument with the race neutral reason. There's been no . . . pattern established, the defense has not established its prima facie case in this matter, Judge." The court then determined that the prosecutor had satisfied the race neutral reason and excused juror 160.
 {¶ 25} We have recently stated that "the trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying Batson."State v. Bulin, 5th Dist. No. 2008-CA-00045,2008-Ohio-5691, at ¶ 55, quoting Rice v. Collins, supra at 126 S.Ct. at 977. (Breyer, J., concurring).
 {¶ 26} We do not find that the dismissal of juror 160 was in error and we find that the prosecutor's reason for using a peremptory challenge on juror 160 was racially neutral.
 {¶ 27} Appellant's first assignment of error is overruled.
 II. {¶ 28} In his second assignment of error, Appellant argues that the prosecutor committed misconduct during his rebuttal closing argument. *Page 9 
 {¶ 29} In determining whether a prosecutor committed misconduct, the test we apply is whether the complained about remarks are improper, and if so, whether they prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, we must review the complained of conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 30} "* * * [T]he prosecution is entitled to a certain degree of latitude in summation, * * *" State v. Liberatore (1982),69 Ohio St.2d 583, 589, 433 N.E.2d 561, 566. Indeed, "[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Stephens (1970),24 Ohio St.2d 76, 82, 263 N.E.2d 773, 777.
 {¶ 31} Given the numerous safeguards in place to assure a fair trial, "and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial. * * * [Citations omitted.] * * *
 {¶ 32} "* * * [I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless including most constitutional violations." United States v. Hasting (1983),461 U.S. 499, 508-509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, certiorari denied (1985), 469 U.S. 1218, 105 S.Ct. 1199, 84 L.Ed.2d 343. *Page 10 
 {¶ 33} In this case, Appellant complains of two remarks made by the prosecutor during rebuttal closing. Specifically, Appellant claims that the following comments were misconduct:
 {¶ 34} "Officer Diels testified, ladies and gentlemen, that the crack cocaine had a street value, in his opinion, of more than $20 and that this is something people smoke on the street to get high. The suggestion that somebody would perhaps leave this behind by accident is somewhat ridiculous.
 {¶ 35} "* * *
 {¶ 36} "This crack cocaine, the evidence I believe shows, was left behind deliberately and covered up by this Defendant deliberately by his wallet.
 {¶ 37} "This Defendant has motive to come in here and lie to you."
 {¶ 38} Appellant objected to these statements. At a sidebar conference, the prosecutor stated that had he been permitted to finish that argument, he would have stated that his motive to lie was his potential civil suit against the police officers. The trial court overruled the objection. The prosecutor then proceeded with his argument, stating,
 {¶ 39} "Remember what the Defendant said when he testified. I asked if he had talked to Internal Affairs or anybody else in authority at the police station because he was treated so unfairly by the police. And he said, well, after this is all done, he's going to sue the police department.
 {¶ 40} "My suggestion to you is that he has motivation for being here today, aside from the fact that he has, of course, a right to deny any allegation made against *Page 11 
him. He has a motivation. He has an interest, he has a bias, just like any other witness."
 {¶ 41} We do not find that these statements made by the prosecutor were misconduct, but in fact, were in response to Appellant's closing argument wherein Appellant's counsel commented on the truthfulness of Officer Diels testimony and stated that the crack could have been left in the car by the previous owner. Specifically, trial counsel stated, "Who is to say — I mean, who knows when he purchased the vehicle the prior owner didn't have that, that wasn't his piece of crack cocaine. And if you'll notice, these vehicles, if you take street jargon, look like dope cars. That's what he does, he customizes them, he remodels them, he rebuilds them, and then he sells them."
 {¶ 42} We find the prosecutor's comments to be a fair response to defense counsel's implications that the crack cocaine was left by a prior owner, not Appellant.
 {¶ 43} Moreover, the trial court instructed the jury that closing arguments are not evidence and that the jury is the sole judge of credibility of witnesses. Specifically, the trial court stated:
 {¶ 44} "The evidence does not include the indictment, voir dire, opening statements, or closing arguments of counsel. The opening statements and closing arguments of counsel are merely designed to assist you in understanding the evidence and law. They are not evidence.
 {¶ 45} "* * * * *Page 12 
 {¶ 46} "You are the sole judges of the facts, the credibility of witnesses, and the weight of the evidence. To weigh the evidence, you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives.
 {¶ 47} "These tests include the appearance of each witness upon the stand; his or her manner of testifying; the reasonableness of the testimony; the opportunity he or she had to see, hear and know the things concerning which he or she testified; his or her accuracy of memory; the witness's degree of attention at the time he or she observed the offender; the interval of time between the event and the identification; the witness's frankness, or lack of it; intelligence, interest and bias, if any; together with all the facts and circumstances surrounding the testimony. Applying these tests, you will assign to the testimony of each witness such weight as you deem proper.
 {¶ 48} "* * * *
 {¶ 49} "You are certainly all aware of the fact that two persons who are witnesses to an incident may often see or hear it differently. In considering a discrepancy in a witness's testimony, you should consider whether such discrepancy concerns an important fact or a trivial one.
 {¶ 50} "If you conclude that a witness has willfully lied in his or her testimony as to a material fact, you may distrust all of his or her testimony and you would then have the right to reject all of his or her testimony unless, after all of the evidence, you believe that the probability of truth favors his or her testimony and other particulars."
 {¶ 51} We find State v. Kish, (May 14, 2003), 9th Dist. No. 02-CA-8246, to be instructive on this matter. In Kish, the court determined that where the prosecutor stated in closing arguments that "[Defendant's] attitude on the witness stand should tell *Page 13 
you that he's not telling the truth[,]" and "[Defendant's] got motive to lie. He has reason to lie," such comments were harmless since the jury had been instructed that they were to determine witness credibility. The jury was similarly instructed here and was further instructed that closing arguments were not evidence. Appellant has failed to show that any actions by the prosecutor denied him a fair trial. See State v.Sage (1987) 31 Ohio St.3d 173, 182, 510 N.E.2d 343.
 {¶ 52} Accordingly, Appellant's second assignment of error is overruled.
 III. {¶ 53} In his third assignment of error, Appellant claims that the evidence was insufficient to support a finding of guilty and that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 54} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 55} Conversely, when analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all *Page 14 
reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 56} In order to convict Appellant of possession of crack cocaine, the State needed to prove that Appellant knowingly possessed the drug. Possession may be actual or constructive. State v. Butler (1989),42 Ohio St.3d 174, 176, 538 N.E.2d 98. Constructive possession occurs when a person knowingly exercises dominion or control over the item, even without physical possession. State v. Hankerson (1982),70 Ohio St.2d 87, syllabus, 434 N.E.2d 1362. More than just a person's presence in the vicinity of the item is necessary to prove constructive possession. SeeState v. Haynes (1971), 25 Ohio St.2d 264, 267 N.E.2d 787, paragraph two of syllabus. Rather, additional circumstances, such as the close proximity of the item and its ready availability, support the conclusion of constructive possession. State v. Riley, 9th Dist. No. 20618, 2001-Ohio-1785. A defendant's "possession of the keys to the automobile is a strong indication of control over the automobile and all things found in or upon the automobile." Furthermore, when "one is found to be the driver of a car in which drugs are within easy access of the driver, constructive possession will be established." State v. Miller (July 27, 1999), 4th Dist. No. 98-CA-2467, quoting State v. Kurtz (Oct. 27, 1998), 10th Dist. No. 98AP-210.
 {¶ 57} In the present case, the officers testified that Appellant was driving the car, Appellant admitted to purchasing the car two days before the traffic stop, and the *Page 15 
officers observed Appellant place his wallet over the ashtray where a rock of crack cocaine was located and easily accessible from Appellant's location in the driver's seat.
 {¶ 58} The jury had the opportunity to listen to the witnesses and judge their credibility. It is within their province to determine that the officers were more credible than Appellant and accordingly, we defer to the judgment of the jury and find that their verdict was not against the manifest weight of the evidence. Moreover, we find that the verdict was supported by sufficient evidence.
 {¶ 59} Appellant's third assignment of error is overruled.
 {¶ 60} For the foregoing reasons, we overrule Appellant's assignments of error. The judgment of the Stark County Court of Common Pleas is affirmed By: Delaney, J. Farmer, P.J. and Edwards, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1