STATE of Ohio, Appellee,

v.

BRYANT, Appellant.

[Cite as *State v. Bryant* (1995), 104 Ohio App.3d 512.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–013.

Decided June 9, 1995.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Mary Sue Barone,* Assistant Prosecuting Attorney for appellee.

*V. Robert Candiello,* for appellant.

SHERCK, Judge.

This appeal comes to us from a judgment of conviction entered by the Lucas County Court of Common Pleas on charges of breaking and entering and attempted grand theft. Because we conclude that the prosecutor's inability to articulate a racially neutral nonpretextual reason for the state's exercise of a peremptory challenge to an African–American venire person violated appellant's rights under Amendment XIV of the Constitution of the United States, we reverse appellant's convictions.

On June 9, 1993, witnesses observed three men break into a fenced lot at a Toledo auto repair shop and attempt to steal a car. These witnesses gave police a description of the car in which the three were riding and its license number. A few minutes later police stopped a car fitting the general description and having the same license number; appellant, Ian D. Bryant, was the driver. Appellant was arrested and later indicted for breaking and entering and attempted grand

theft of a motor vehicle. He pled not guilty to both charges and, on November 8, 1993, proceeded to trial.

Appellant is an African–American. The jury venire for his trial contained two African–Americans. Following voir dire, both appellant and the state had no challenges for cause. For its first peremptory challenge, however, the state chose one of the two African–Americans on the panel.

"THE COURT: State of Ohio, preempt. [*Sic.*]

"[STATE]: Edward Jamison.

"THE COURT: He is now juror 11?

"[APPELLANT'S COUNSEL]: Your Honor, at this time I would object, cite the case of Batson. [*Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.] This is a black juror. I think the prosecutor has to put on the record the reason for excuse.

"[STATE]: There is another black individual on the jury. He indicated previous jury duty, and this is a preempt [*sic*] situation, and other than that with another black or Afro–American on the jury or as a potential juror, which the state does not intend to throw off, no further explanation will be given.

"[APPELLANT'S COUNSEL]: Your Honor, I think this is not acceptable on the Batson and ask the court if the court will allow her to use that peremptory. I feel—understand the Batson—the fact there's another black person, that's not enough. I think under Batson, I think there has to be some significant reason. Here, nothing about his employment, knowing any of the parties, any reason to show prejudice—the fact he is a black person is not enough to put him off under Batson.

"[STATE]: May I be heard?

"THE COURT: Go ahead.

"[STATE]: I don't have the case in front of me. The reason why explanations had to be offered in that case is because he was, that person, that black individual, was the only person left on the jury at the time, and this is a situation where there is another Afro–American—there well could be another Afro–American called. This is preempt [*sic*], and other than that, the state need offer no further explanation. Preempts [*sic*] can be for the hair up on the back of the neck situation, or not right for this particular case. No other reason—and definitely not for reason of color. If my recollection serves me, it was a situation where there was only one black juror.

"[APPELLANT'S COUNSEL]: The opinion went a lot deeper than that. B–A–T–S–O–N.

"THE COURT: Give me a neutral explanation for that challenge, if you have any.

"[STATE]: You're addressing me, Your Honor?

"THE COURT: Yeah.

"[STATE]: Basically, he stated he served previous jury duty many times. With previous jury duty, second and third time around, basically, it's harder to concentrate and they're irritated at being there, number; number two, this is a situation where there is another black juror on the potential juror's list; and three, that's part of the the state's preempt [*sic*] option as to whether to give further reasons or not. Now I didn't spend an hour and a half on voir dire in this case because I thought we would move it along. I would be happy to go outside and question further and give you more of a basis.

"THE COURT: Want to be heard further, Mr. Geller?

"[APPELLANT'S COUNSEL]: Yes. As far as him serving—maybe seven [*sic*] as to a guilty verdict—he works at Jeep, so he's obviously paid for being here. I think he said he works at Jeep. He didn't seem annoyed. I don't know of any statistics a second or third time where someone is chosen makes a difference one way or the other. The fact there's another black there is not significant. The issue is only as this particular juror.

"[STATE]: I disagree with you, because I think it is significant. The fact is that the jury has to be representative of all different backgrounds. It will be representative, and if you throw the other guy off, which is speculative, you don't know at this point, that's your doing, and you don't know who might be called out, who out there in the back and there are other Afro–Americans and Asian–Americans and Mexican.

"THE COURT: Preempt [*sic*] will be granted. It's my view of the situation that the defendant has no right, he has no exclusive right to, no constitutional right to a jury with some members or a single member of his or her own race on the jury, a black member, a black or member of any other race who is on trial is not entitled to a mixed jury of, composed of members of his own race and members of the white race and it arbitrarily excludes no one of that race is on the jury. I'm satisfied that there's sufficient neutral basis for the preempt [*sic*] and it will be granted.

"[APPELLANT'S COUNSEL]: Note my objection and move for a mistrial.

"THE COURT: Denied."

The case then proceeded to trial. Appellant was convicted on both counts and sentenced to two consecutive eighteen month terms of imprisonment. From this

judgment of conviction and sentence appellant now brings this appeal. He raises the following four assignments of error:

"Assignment of Error No. 1:

"The trial court committed prejudicial error and violated the defendant's constitutional rights afforded to him under the Equal Protection Clause of the United States Constitution in its overruling the defense's objection and request for mistrial in the state's use of a peremptory challenge to exclude an African–American prospective juror without articulating a proper race-neutral explanation for the same.

"Assignment of Error No. 2:

"The verdict and judgment of the trial court was clearly and manifestly against the weight of the evidence necessitating reversal of appeal.

"Assignment of Error No. 3:

"The appellant was denied due process of law under the Sixth and Fourteenth Amendments to the United States Constitution by inadequate and ineffective assistance of counsel at pretrial and trial proceedings.

"Assignment of Error No. 4:

"The trial court committed reversible error in the sentencing of the defendant to consecutive sentences for what were allied offenses, and the trial court's overruling of defendant's motion to set aside and/or modify its original sentence was contrary to law."

Appellant, in his first assignment of error, argues that he was denied his constitutional rights to equal protection under the law.

It has long been held that a defendant is denied the equal protection of the law guaranteed to him or her by the Fourteenth Amendment to the Constitution of the United States as well as Section I, Article 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which members of the defendant's race have been purposely excluded. *Strauder v. W. Virginia* (1880), 100 U.S. 303, 305, 25 L.Ed. 664. It is, therefore, a violation of the defendant's constitutional rights to exclude members of the defendant's race from the jury venire because of their race, *id.,* or under the false assumption that members of the defendant's race are unqualified to serve as jurors. *Neal v. Delaware* (1881), 103 U.S. 370, 379, 26 L.Ed. 567. It follows, then, that the equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as the defendant will be unable to impartially consider the state's case against the defendant. *Batson, supra,* 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82–83. The principle applies to the state's exercise of its peremptory challenge to

exclude members of the same race as the defendant on a petit jury. *Swain v. Alabama* (1965), 380 U.S. 202, 209–210, 85 S.Ct. 824, 829–830, 13 L.Ed.2d 759, 766–767.

In *Swain* the United States Supreme Court held that a defendant could make out a prima facie case of purposeful discrimination if he or she could prove, for example, that the peremptory challenge system was used in "case after case" to exclude African–Americans from petit juries. *Id.* at 223, 85 S.Ct. at 837–838, 13 L.Ed.2d at 774. The burden of demonstrating the repeated peremptory striking of African–Americans over a number of years, however, was too onerous for many defendants, including *Swain. Batson,* 476 U.S. at 92, 106 S.Ct. at 1720–1721, 90 L.Ed.2d at 84–85.

*Batson* made it easier for a defendant to establish a prima facie equal protection violation by setting up a three-part test to demonstrate such a violation. First, a defendant had to show that he or she was member of a cognizable racial group. (This requirement was negated by *Powers v. Ohio* [1991], 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411, which held that any defendant may raise an equal protection claim on behalf of a juror excluded because of a juror's race.) Next, it must be shown that one of the group's members has been excluded from the defendant's jury. Finally, the circumstances of the exclusion must give rise to an inference that the exclusion was based on race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722–1723, 90 L.Ed.2d at 87–88. See, also, *State v. Hernandez* (1992), 63 Ohio St.3d 577, 581–582, 589 N.E.2d 1310, 1313–1314.

■ Once a prima facie case of discrimination is so established, the burden shifts to the prosecution to explain its peremptory challenge with a racially neutral reason. *Id.; Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; *State v. Cook* (1992), 65 Ohio St.3d 516, 519, 605 N.E.2d 70, 76–77. The reason must be more than merely an affirmation of the prosecutor's good faith or an expression of his or her intuition. *State v. Hernandez, supra,* 63 Ohio St.3d at 582, 589 N.E.2d at 1313–1314. The reason need not, however, rise to the level of a challenge for cause. *Id.* A trial court's determination that the prosecution provided a racially neutral reason for its peremptory challenge will not be overturned on appeal unless clearly erroneous. *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395; *State v. Hernandez,* 63 Ohio St.3d at 583, 589 N.E.2d at 1314; *State v. Cook, supra.*

■ Applying these principles to the facts in the instant case, we initially note that the argument of appellant's counsel that a prima facie equal protection violation arises simply because the state used a peremptory challenge on one of two African–Americans is erroneous. Simple numbers are insufficient to demonstrate the violation; there must be more. *United States v. Branch* (C.A.5 1993),

989 F.2d 752, 755 (holding that the presumption does not arise merely because a prosecutor strikes one of two African–American jurors on a panel).

However, in the instant matter, additional facts were available to the trial court. The record indicates that the state asked no questions of Jamison during voir dire. In fact, the only information elicited from Jamison was that he was married and an employee of the Jeep Division of Chrysler Corporation and had once, in 1987, served on a municipal court jury which returned a guilty verdict in a drunk driving case. All of this information was elicited by questions from the bench. Given the state's lack of interest in this juror and the sketchy information that this juror did provide, we cannot say that the trial court erred in its decision to require the prosecutor to state a racially neutral reason for its peremptory challenge.

The trial court's decision to accept the state's explanation as racially neutral and nonpretextual is another matter. Once the prima facie demonstration of wrongful exclusion of a juror is made, the burden shifts to the prosecutor to provide a " 'clear and reasonably specific' explanation of his 'legitimate reason' for exercising the challenges." *Harrison v. Ryan* (C.A.3 1990), 909 F.2d 84, 88 quoting *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89.

■ When questioned, the state set forth three reasons for raising the peremptory challenge. First, because Jamison had served on a previous jury, he would supposedly find it hard to concentrate and become more easily irritable by again serving; second, because there was another African–American on the panel, there could be no discriminatory intent; and third, the state, according to the prosecutor, had no duty to state its reasons for exercising a peremptory challenge. As discussed above, the state's third position is simply wrong. Once a prima facie case of discriminatory exclusion has been made, the prosecution must come forward with a racially neutral explanation of its challenge. *Batson, supra,* 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82–83. The state's second position is also unavailing. It is irrelevant how many minority jurors remain on the panel if even one is excluded on the basis of race. *Jones v. Ryan* (C.A.3 1993), 987 F.2d 960, 972; *United States v. David* (C.A.11 1986), 803 F.2d 1567.

■ Remaining is the state's explanation that because of Jamison's previous service as a juror he would be less able to concentrate during this trial or be more likely to become irritable. The state provided no support for this assertion whatsoever. It did not note any particular behavior by Jamison which would indicate that he was likely to become inattentive or irritable. It cited no answer that Jamison had given during voir dire which indicated such a propensity. In short, the state merely relied on the unsupported (and likely erroneous) generalization that jurors who have had a previous jury experience some years ago become irritable or fail to pay attention during a later jury trial. Such general-

izations are simply insufficient to demonstrate a racially neutral reason for a peremptory challenge once the duty to state such a reason has arisen. *Jones v. Ryan, supra,* 987 F.2d at 972–974. Therefore, the state failed to articulate a specific and reasonable racially neutral nonpretextual explanation for the peremptory exclusion of Jamison, and the trial court's determination that it did state an acceptable reason is clearly erroneous.[1] Accordingly, appellant's first assignment of error is well taken.

In view of our handling of appellant's first assignment of error, we need not reach the merits of appellant's remaining assignments of error. See App.R. 12(A)(1)(c).

---

1. During the pendency of this case, the United States Supreme Court announced a modification of the *Batson* test. *Purkett v. Elem* (1995), 514 U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834. The court stated:

"Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. *Hernandez v. New York,* 500 U.S. 352, 358–359 [111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395, 404–405] (1991) (plurality opinion); *id.* at 375 [111 S.Ct. at 1874–1875, 114 L.Ed.2d at 416] (O'Connor, J., concurring in judgment); *Batson, supra,* at 96–98 [106 S.Ct. at 1722–1724, 90 L.Ed.2d at 87–89]. The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' *Hernandez,* 500 U.S. at 360 [111 S.Ct. at 1866–1867, 114 L.Ed.2d at 406] (plurality opinion); *id.* at 374 [111 S.Ct. at 1874, 114 L.Ed.2d at 415–416] (O'Connor, J., concurring in judgment).

"The Court of Appeals erred by combining *Batson's* second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.,* a 'plausible' basis for believing that 'the person's ability to perform his or her duties as a juror' will be affected. [*Elem v. Purkett* (C.A.8 1994) ] 25 F.3d, [679] at 683. It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. *Batson, supra,* at 98 [106 S.Ct. at 1723–1724, 90 L.Ed.2d at 88–89]. *Hernandez, supra,* at 359 [111 S.Ct. at 1866, 114 L.Ed.2d at 405–406] (plurality opinion). At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must* terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. Cf. *State v. St. Mary's Honor Center v. Hicks,* 509 U.S. 502, —— [113 S.Ct. 2742, 2748–2749, 125 L.Ed.2d 407, 416–419] (1993)." *Id.* at —— – ——, 115 S.Ct. at 1770–1771, 131 L.Ed.2d at 839.

The rule articulated in *Elem* arose in a federal habeas corpus proceeding and may not be applicable in the instant context. Even if applicable, however, it does not alter our conclusion. In this matter, the prosecutor's explanation of its challenge to juror Jamison because of his prior jury service may have been race neutral pursuant to *Elem,* but it was, nonetheless, implausible and unpersuasive as an explanation. Given this, we can only conclude that the trial court's failure to find the explanation pretextual was clearly erroneous.

On consideration whereof, the courts finds that the defendant was prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to the trial court for a new trial. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed.*

ABOOD, P.J., and GLASSER, J., concur.