[Cite as *State v. Triplett*, 2014-Ohio-3101.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA00209 |
| SON ANDERSON TRIPLETT, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2013-
CR-0563

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     July 14, 2014

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

JOHN FERRERO                               GEORGE URBAN
Stark County Prosecutor             116 Cleveland Ave. N.W., Ste 808
BY RENEE WATSON                Canton, OH 44702
110 Central Plaza South
Canton, OH 44702

*Gwin, J.*

{¶1} Defendant-appellant Son Anderson Triplett ["Triplett"] appeals his convictions and sentences on one count of assault and one count of tampering with drugs after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} Charla Green lives on Smith Ave. SW in Canton, across the street from Tonya Rohrer. On March 23, 2013, she arrived home around 9:00 p.m. to find a white Cadillac parked in front of her house. She parked behind the vehicle and walked past it to her house. She recognized the man in the driver's seat as Triplett — she had seen him and Rohrer together in the past.

{¶3} Triplett sat parked for a long time, and then repetitively drove up and down the street. Green thought the situation was suspicious, and it scared her children. She called 9-1-1 and reported Triplett's activities.

{¶4} Meanwhile, Rohrer was home asleep. Around 2:30-3:00 a.m., Triplett entered her home, angry. Rohrer "knew not to argue with him" and "didn't want him to go all crazy in [her] house with [her] kids around," so she went outside with him and sat in his car. Triplett then took off with Rohrer in the car and drove around Canton while beating her, biting her and threatening to kill her. Eventually Rohrer jumped from the moving car to escape.

{¶5} While all that was going on, Gilise Mammone, an insomniac, was up watching television. Around 3:00 a.m., she heard someone pounding frantically at her door. She looked outside, but did not see anyone. She went to a different window and saw a white car drive past. Mammone then went to the front door and opened the

interior door, but still saw nothing. She then opened the screen door and yelled, "What's going on out here?"

{¶6}    Rohrer emerged from between the houses, and begged Mammone to let her in, pleading, "he's trying to kill me." Mammone said no, closed, and locked the screen door. Rohrer stepped up onto the porch, tripping the security light. Mammone then saw terror in Rohrer's eyes, and an injury on her forehead. Rohrer continued repeating, "He's going to kill me." Mammone relented and let Rohrer come inside her home.

{¶7}    Mammone sat Rohrer down and called 9-1-1. After giving the dispatcher her location and the nature of the call, she put Rohrer on the phone. Rohrer was upset, crying and breathing heavily. She told the dispatcher "he was beating on me...I'm not lying about it- he tried to kill me."

{¶8}    Three Canton Police Officers arrived shortly thereafter. Although Rohrer was "in a semi-state of hysteria," Officer Jim Meyers also felt Rohrer was not being completely honest. Rohrer first claimed that while out walking her dog, she was abducted by an unknown black male who was driving a white Cadillac. She said the man beat her, bit her, choked her and explained to her in detail how he was going to kill her. Meyers noted Rohrer had a lump on her forehead, but Rohrer refused medical attention and stated she wanted to go home. Meyers put her in his cruiser and started driving toward her home.

{¶9}    On the way, a call went out notifying officers that the suspect white Cadillac and driver had been located and stopped. Meyers changed course, and took Rohrer to that location. She identified Triplett as the man who assaulted her.

{¶10} At that point, Rohrer became more cooperative. She told Meyers that she knew Triplett, and that initially their meeting that evening began civilly. He came to her house and they sat in his car talking. Then the conversation became heated, and she wanted to leave the car. However, Triplett grabbed her, drove off at speed and started "whaling" on her — choking her, biting her and hitting her in the ribs. He explained how he was going to kill her. Rohrer finally managed to bail out of the car near Mammone's home.

{¶11} Meyers photographed Rohrer's injuries — a lump on her head bruises on her neck and a bite mark on her chin, Rohrer additionally complained that her ribs hurt, but still refused medical treatment.

{¶12} Triplett was arrested and booked by Officers Sharpe and Grant. During booking a clear plastic sandwich baggie containing six blue pills was found in Triplett's pants pocket. Triplett initially claimed the pills were Viagra, but then later stated they were Xanax and that he sometimes sells the pills for cash. The pills were sent to the Canton Stark County Crime Lab where Jay Spencer completed testing on the pills. He confirmed that they were indeed Xanax, a Schedule IV drug.

{¶13} As a result of his actions, Triplett was later charged with one count each of kidnapping, assault and tampering with drugs.

{¶14} The state presented six witnesses. Triplett rested without presenting evidence. After hearing all the evidence and deliberating for three hours, the jury acquitted Triplett of kidnapping, but convicted him of assault and tampering with drugs. Triplett was subsequently sentenced to 180 days for assault and 24 months for tampering with drugs. The court ordered Triplett to serve the sentences concurrently.

*Assignments of Error*

{¶15}  Triplett raises four assignments of error,

{¶16}  "I. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE USE A PEREMPTORY CHALLENGE TO EXCUSE THE ONLY PROSPECTIVE AFRICAN AMERICAN JUROR.

{¶17}  "II. APPELLANT WAS DENIED A FAIR TRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT.

{¶18}  "III. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSITUTION,[sic.] BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSITANCE. [sic.]

{¶19}  "IV. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

{¶20}  A defendant is denied equal protection of the law guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which members of the defendant's race have been purposely excluded. *Strauder v. W. Virginia*, 100 U.S. 303, 305, 25 L.Ed. 664(1880); *State v. Hernandez*, 63 Ohio St.3d 577, 589 N.E.2d 1310(1992); *State v. Bryant*, 104 Ohio App.3d 512, 516, 662 N.E.2d 846(6th Dist. 1995). The "equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the

same race as the defendant will be unable to impartially consider the state's case against the defendant." *State v. Bryant,* 104 Ohio App.3d 512, 516, 662 N.E.2d 846(6th Dist. 1995); *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69(1986).

{¶21} In his first assignment of error, Triplett maintains that the trial court failed to conduct a proper constitutional analysis as outlined in *Batson v. Kentucky* in determining that the state was not racially motivated in excluding an African-American from the jury through the use of peremptory challenges. See, *Hicks v. Westinghouse Materials Co.,* 78 Ohio St.3d 95, 98, 676 N.E. 2d 872(1997); *State v. Toland,* 5th Dist. No. 2006-CA-0162, 2007-Ohio-644.

### The Batson Test

{¶22} Whenever a party opposes a *peremptory* challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test * * *." *Hicks v. Westinghouse Materials Co.,* 78 Ohio St.3d at 99, 676 N.E. 2d 872.

{¶23} In *Hicks,* the Ohio Supreme Court set forth the *Batson* test as follows:

> The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the

fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, *certiorari denied* (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, *Batson* at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' Id. at 95, 106 S.Ct. at 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. at 723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. *Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409(1991).

*Hick,* 78 Ohio St.3d. at 98-99, 676 N.E.2d 872.

{¶24} Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even

plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834(1995) (*per curiam*); *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824(2006).

**{¶25}** Last, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem*, 514 U.S. at 766-767, 115 S.Ct. 1769, 131 L.Ed.2d 834. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. at 365, 111 S.Ct. 1859,114 L.Ed.2d 395; *State v. Nash*, 5th Dist. No. 1995 CA 00024, 1995 WL 767987(August 14, 1995). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769, 131 L.Ed.2d 834; *Rice v. Collins,* 546 U.S. at 338, 126 S.Ct. 969, 163 L.Ed.2d 824.

**{¶26}** On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error. *Hernandez v. New York,* 500 U.S. at 364-366, 111 S.Ct. 1859, 114 L.Ed.2d 395. (Holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province'"). *Rice v. Collins,* 546 U.S. at 338, 126 S.Ct. 969, 163 L.Ed.2d 824.

**{¶27}** It is irrelevant how many minority jurors remain on the panel if even one is excluded because of race. *State v. Bryant,* 104 Ohio App.3d 512, 662 N.E.2d 846(6th Dist. 1995); *State v. Tuck* 80 Ohio App.3d 721, 724, 610 N.E.2d 591(10th Dist. 1992)

(*Batson*, applicable even if there is only one African-American juror on the panel); *Jones v. Ryan*, 987 F.2d 960, 972( 3rd Cir. 1993); *United States v. David*, 803 F.2d 1567(11th Dist. 1986).

### *Batson Does Not Apply to a Challenge "For Case."*

**{¶28}** In the case at bar, Triplett complains that the trial court erred when it did not make a clear record that it understood or applied the *Batson* test when it permitted the state to use a peremptory challenge to excuse Juror 36, the only prospective African American juror. (Appellant's Brief at 8).

**{¶29}** However, the state did not seek to utilize a preemptory challenge to remove Juror No. 36; rather the trial judge sua sponte struck the juror "for cause." (1T. at 78-79).

**{¶30}** Challenges for cause are governed by R.C. 2945.25 and Crim.R. 24(C). A person called as a juror in a criminal case may be challenged for many reasons, including "That he otherwise is unsuitable for any other cause to serve as a juror." R.C. 2945.25(0). See Crim.R. 24(C)(14). In *State v. Cassano*, the Ohio Supreme Court observed,

> Defendants are entitled to fair trials, an essential part of which is "'a panel of impartial, "indifferent" jurors.' " *Murphy v. Florida* (1975), 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589, *quoting Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. However, trial courts have discretion in determining a juror's ability to be impartial. *State v. Williams* (1983), 6 Ohio St.3d 281, 288, 6 OBR 345, 452 N.E.2d 1323. "'Deference must be paid to the trial judge who sees and hears the juror.' "

*State v. Tyler* (1990), 50 Ohio St.3d 24, 30, 553 N.E.2d 576, *quoting Wainwright v. Witt* (1985), 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841. Thus, a "ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary * * * so as to constitute an abuse of discretion." *Tyler*, 50 Ohio St.3d at 31, 553 N.E.2d 576. *Accord State v. Williams* (1997), 79 Ohio St.3d 1, 8, 679 N.E.2d 646.

96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶58.

{¶31} In *State v. Sanders*, 92 Ohio St.3d 245, 249, 750 N.E.2d 90 (2001), the Supreme Court of Ohio held that: "[A]n erroneous excusal for cause, on grounds other than the venireman's views on capital punishment, is not cognizable error, since a party has no right to have any particular person sit on the jury. Unlike the erroneous denial of a challenge for cause, an erroneous excusal cannot cause the seating of a biased juror and therefore does not taint the jury's impartiality." At least one Court has recognized, however,

> We recognize that a trial court must have substantial discretion in ruling upon challenges for cause—precisely because it is there to see and hear the prospective juror, while we are not. But completely immunizing from appellate review decisions to excuse prospective jurors for cause may lead to substantial injustice. As a result, a trial judge may, with impunity, follow a practice of routinely allowing the State (or one party in civil litigation) to exclude jurors for cause without any basis in the record, while requiring a strict basis in the record for the other party's challenges for cause. This would have the effect of allowing unlimited peremptory

challenges by one party, but not by the other, thereby allowing the preferred party a greater opportunity to choose the jury.

*State v. Smith,* 2nd Dist. Montgomery No. 24402, 2013-Ohio-1586, ¶23.

{¶32} In the case at bar, excusing Juror No. 26 was within the trial court's discretion. Crim.R. 24(B) provides,

A person called as a juror may be challenged for the following causes:

* * *

(14) That he is otherwise unsuitable for any other cause to serve as a juror.

{¶33} A juror can be excused for cause for a myriad of reasons under the catchall provision of R.C. 2945.37(O). Reasons can range from inattentiveness to financial hardship to health concerns. Indeed, in *State v. Sanders,* 92 Ohio St.3d 245, 249, 2001-Ohio-189, 750 N.E.2d 90, a venire person was excused for cause because she could not go without a cigarette for any length of time.

{¶34} In the case at bar the record indicated that Juror 36 was have trouble giving the trial the attention it deserved. (1T. at 53-54; 66). In making its decision to excuse Juror 36 for cause, the trial court made it clear that not only Juror 36's answers, but also what he was conveying through his body language, indicated he would not give this case the attention it was due. Juror 36's answers and inattentive attitude made him otherwise unsuitable as a juror pursuant to R.C. 2945.25(O).

{¶35} Triplett has not alleged that the trial court's reasons for removing Juror No. 36 for cause were not supported by the record. Triplett's only argument is that the

prosecutor "purposefully excused" the only African-American juror. (Appellant's Brief at 8). The record does not support Triplett's contentions.

**{¶36}** Triplett's first assignment of error is overruled.

II.

**{¶37}** In his second assignment of error, Triplett argues that the prosecutor committed misconduct by engaging in a line of questioning that was "testimonial in nature" during her direct examination of Rohrer.

**{¶38}** The prosecutor's duty in a criminal trial is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor is responsible to ensure that an accused receives a fair trial. *Berger v. United States*, 295 U. S. 78, 55 S.Ct. 629, 79 L.Ed. 1314(1935) *overruled on other grounds by Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *State v. Staten* (1984), 14 Ohio App.3d 78, 470 N.E.2d 249(2nd Dist. 1984).

**{¶39}** Allegations of prosecutorial misconduct implicate due-process concerns, and the touchstone of the analysis is the "'fairness of the trial, not the culpability of the prosecutor.'" *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, 840 N.E.2d 593, ¶ 92, *quoting Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203, 209-210(1993); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144(1986).

**{¶40}** Triplett first maintains that the prosecutor essentially testified by asking Rohrer leading questions.

{¶41} In the case at bar, the trial court found Rohrer was being uncooperative under the state's questioning and permitted the state to question Rohrer as a hostile witness, and pursuant to Evid. R. 611(C).

{¶42} Evid.R. 611(C) provides, "Leading questions [may be used on direct examination] to develop [a witness's] testimony. * * * When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."

{¶43} Evid.R. 607 states:

> The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Rules 801(D)(1)(A), 801(D)(2), or 803.

{¶44} Triplett does not challenge the trial court's decision to permit the state to question Rohrer as a hostile witness. Thus, pursuant to Evid. R. 607, the state could use Rohrer's prior statement for impeachment purposes.

{¶45} Triplett next contends that the prosecutor made improper comments during closing argument.

{¶46} The test for prejudice in closing arguments is "' "whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant." ' " *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 83, *quoting State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237 (2000), *quoting State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

**{¶47}** For a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986). To determine whether the remarks were prejudicial, the court must review the closing argument in its entirety. *State v. Slagle*, 65 Ohio St.3d 597, 607, 605 N.E.2d 916 (1992); *State v. Moritz*, 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980). Thus, the court must consider all of the prosecutor's remarks, irrespective of whether the defense preserved an objection. *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993) ( "even though the defense waived objection to many remarks, those remarks still form part of the context in which we evaluate the effect on the jury of errors that were not waived").

**{¶48}** Assuming, arguendo, the prosecutor's comment was improper, we find Triplett cannot show prejudicial error. The trial court sustained the objection and gave a curative instruction. A jury is presumed to follow the curative instructions of the court. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634(1995); *State v. Loza*, 71 Ohio St.3d 61, 75, 641 N.E.2d 1082, 1100(1994). Additionally, there is only one incident of alleged misconduct in closing argument. If indeed the statement constituted misconduct, it was an isolated incident in an otherwise properly tried case. We find the prosecutor's single, isolated statement in closing argument to be harmless beyond a reasonable doubt.

**{¶49}** Triplett's second assignment of error is overruled.

III.

**{¶50}** Officer Lamar Sharpe of the Canton Police Department testified that Triplett made a statement that he, Triplett, sold Xanax. (1T. at 240). In his third

assignment of error, Triplett contends that his trial counsel was ineffective when he failed to play any audio or video recordings concerning the alleged statement he made to Officer Sharpe.[Appellant's Brief at 12).

{¶51} The standard for reviewing claims for ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.

{¶52} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client.

{¶53} Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

{¶54} We apply the *Strickland* test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. *State v. Blacker*, 5th Dist. Guernsey No. 2005-CA-41, 2006-Ohio-5214.

**{¶55}** In the case at bar, the following exchange occurred at trial

> [Defense counsel]: There's no recording of this statement that he made to you?
>
> [Officer Sharpe]: Actually, they are taped down there.

1T. at 241. Nothing in the record supports the conclusion that a tape existed of the specific encounter and/or that if a tape did in fact exist it would be exculpatory to Triplett. Even if Triplett had made no statement concerning the pills found in his possession, however, he cannot demonstrate prejudice as a result of counsel's actions.

**{¶56}** Triplett was convicted of with tampering with drugs pursuant to R.C. 2925.24(B),

> (B) No person shall knowingly adulterate or alter any package or receptacle containing any dangerous drug or substitute any package or receptacle containing any dangerous drug with another package or receptacle.

**{¶57}** R.C. 2925.24(D) provides,

> (D) It is an affirmative defense to a charge under this section alleging that a person altered a dangerous drug that the dangerous drug the person allegedly altered was lawfully prescribed for the person's personal use and that the person did not sell or transfer or intend to sell or transfer the dangerous drug to another person.

**{¶58}** Thus, it was Triplett's burden to produce a valid prescription in order to prove the affirmative defense provided by R.C. 2925.24(D). Accordingly, even if Triplett

had not made a statement to Officer Sharpe the jury could still find him guilty of tampering with drugs.

{¶59} Having reviewed the record that Triplett cites in support of his claim that he was denied effective assistance of counsel, we find Triplett was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Triplett has failed to demonstrate that there exists a reasonable probability that, had trial counsel presented audio or video recordings of Triplett's encounter with Officer Sharpe the result of his case would have been different.

{¶60} Triplett's third assignment of error is overruled.

IV.

{¶61} Triplett contends that his convictions are against the manifest weight of the evidence.

### Standard of Review

{¶62} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶63}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶64}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

**{¶65}** *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

### *Analysis*

### *Sufficiency of the Evidence*

**1). Tampering with Drugs.**

**{¶66}** Triplett was convicted of with tampering with drugs pursuant to R.C. 2925.24(B),

(B) No person shall knowingly adulterate or alter any package or receptacle containing any dangerous drug or substitute any package or receptacle containing any dangerous drug with another package or receptacle.

**{¶67}** R.C. 2925.24(D) provides an affirmative defense to the charge:

(D) It is an affirmative defense to a charge under this section alleging that a person altered a dangerous drug that the dangerous drug the person allegedly altered was lawfully prescribed for the person's personal use and that the person did not sell or transfer or intend to sell or transfer the dangerous drug to another person.

**{¶68}** Triplett argues that Officer Sharpe could only assume Triplett placed the Xanax in the baggie and that the state could not prove that Triplett did not have a valid prescription for Xanax.

**{¶69}** Although the evidence that Triplett was responsible for placing the pills in the plastic bag found in his pocket may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* 61 Ohio St.3d 259, 574 N.E. 2d 492(1991).

**{¶70}** If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *Jenks,* at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks,* at paragraph one of the syllabus.

**{¶71}** Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 1 Ohio St.3d 160, 168, 555 N.E.2d

293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt*, 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶72}** The baggie containing Xanax was found in Triplett's pants pocket creating the inference that he removed the pills from their proper container and placed them in the baggie. Further, the state presented evidence that Triplett told Officer Sharpe he sometimes sold the Xanax for cash. Finally, it was Triplett's burden to produce a valid prescription in order to prove the affirmative defense provided by R.C. 2925.24(D).

**{¶73}** Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Triplett committed the crime of tampering with drugs. We hold, therefore, that the state met its burden of production regarding each element of the crime of tampering with drugs and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Triplett's conviction.

**2. Assault.**

**{¶74}** Triplett was also charged with assault pursuant to R.C. 2903.13(A). To prove the charge, it was necessary for the state to show that Triplett knowingly caused or attempted to cause physical harm to Rohrer. "Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3).

**{¶75}** Triplett points to testimony that Rohrer herself testified Triplett did not cause her injuries. Rohrer testifed that Triplett did not hit her and if she had any marks it

would have been from her coat. (1T. at 158-159). Moreover, Rohrer testified that she hurt herself when she jumped out Triplett's vehicle. (Id.). Rohrer testified that if she had any injuries at all, they would have been by her own actions and she did not seek any medical treatment. (1T. at 160-167). Triplett states this testimony indicates that his conviction for assault was against the manifest weight and sufficiency of the evidence because the alleged victim, Rohrer, testified that her injuries were self-inflicted because she jumped out of Triplett's car while it was moving.

**{¶76}** The state presented evidence that during the 9-1-1 call, state's exhibit 1, Rohrer was upset, crying, and breathing heavily. She repeats many times to the 9-1-1 operator the same thing she kept repeating to Mammone, "he tried to kill me." She then told Officer Meyers that Triplett refused to let her out of his car while he beat her, choked her and bit her.

**{¶77}** Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Triplett committed the crime of assault. We hold, therefore, that the state met its burden of production regarding each element of the crime of assault and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Triplett's conviction.

### *Manifest Weight*

**{¶78}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635,

¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999).

**{¶79}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶80}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶81}     In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is*

*in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶82}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost their way nor created a miscarriage of justice in convicting Triplett of the charges.

**{¶83}** Based upon the foregoing and the entire record in this matter, we find Triplett's convictions were not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony Rohrer and the other witnesses. This court will not disturb the trier of facts finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Triplett's guilt.

{¶84} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each crime beyond a reasonable doubt.

{¶85} Triplett's fourth assignment of error is overruled.

{¶86} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Wise, J., concur